**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 25-12828

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

EIBE SCOTT,

*Defendant-Appellant.*

————————————————

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 1:23-cr-00233-ECM-JTA-1

————————————————

Before JILL PRYOR, NEWSOM, and BRANCH, Circuit Judges.

PER CURIAM:

Eibe Scott, proceeding pro se, appeals his convictions for possession of a firearm and ammunition by a convicted felon. He

argues that 18 U.S.C. § 922(g)(1) is unconstitutional under the Second Amendment as applied to him and that our decision in *United States v. Dubois* (*Dubois II*), 139 F.4th 887 (11th Cir.), *petition for cert. filed*, (No. 25-6281) (U.S. Dec. 4, 2025), was wrongly decided. The government responds by moving for summary affirmance.

Summary disposition is appropriate either where time is of the essence, such as "situations where important public policy issues are involved or those where rights delayed are rights denied," or where "the position of one of the parties is clearly right as a matter of law so that there can be no substantial question as to the outcome of the case, or where, as is more frequently the case, the appeal is frivolous." *Groendyke Transp., Inc. v. Davis*, 406 F.2d 1158, 1162 (5th Cir. 1969).

We review a challenge to the constitutionality of a statute de novo. *United States v. Ostrander*, 114 F.4th 1348, 1359 (11th Cir. 2024).

We have explained that "because a factual, as-applied challenge 'asserts that a statute cannot be constitutionally applied in particular circumstances, it necessarily requires the development of a factual record for the court to consider.'" *Schultz v. Alabama*, 42 F.4th 1298, 1319 (11th Cir. 2022) (quoting *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009)). "This is because an as-applied challenge 'addresses whether a statute is unconstitutional on the facts of a particular case or to a particular party.'" *Id.* (quoting *Harris*, 564 F.3d at 1308).

The Second Amendment protects the right to keep and bear arms.  U.S. Const. amend. II.  The federal felon-in-possession statute prohibits anyone who has been convicted of "a crime punishable by imprisonment for a term exceeding one year" from keeping a firearm or ammunition.  18 U.S.C. § 922(g)(1).

In *Heller*, the Supreme Court held that the District of Columbia's total ban on handgun possession, including possession in the home, violated the Second Amendment.  *D.C. v. Heller*, 554 U.S. 570, 574-76, 628, 635 (2008).  The Court noted that the Second Amendment right to bear arms is "not unlimited" and that while it "[did] not undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment, nothing in [its] opinion should [have been] taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 581, 626.  Following *Heller*, the courts of appeals largely adopted a two-step framework for Second Amendment challenges in which they, first, considered whether a law regulated activity within the scope of the Amendment based on its original historical meaning and, second, applied a means-end scrutiny test to determine the law's validity.  *See Bruen*, 597 U.S. at 18-19.

In *Rozier*, we held that § 922(g)(1) was constitutional, "even if a felon possesses a firearm purely for self-defense." *United States v. Rozier*, 598 F.3d 768, 770 (11th Cir. 2010).  The *Rozier* decision did not rely on means-end scrutiny to conclude that § 922(g)(1) was constitutional, but rather, recognized that prohibiting felons from

possessing firearms was a "'presumptively lawful longstanding prohibition.'" *Id.* at 771 (quoting *United States v. White*, 593 F.3d 1199, 1205-06 (11th Cir. 2010)). We highlighted "that 'nothing in [*Heller*] should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons'" or "suggest[ed] that statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment." *Id.* (quoting *Heller*, 554 U.S. at 2816-17). We concluded that Rozier's purpose for possessing a firearm, and the fact that the firearm was constrained to his home, was immaterial because felons as a class could be excluded from firearm possession. *Id.*

In *Bruen*, the Supreme Court reversed the dismissal of a civil suit under 42 U.S.C. § 1983 brought by applicants who had been denied unrestricted licenses to carry a handgun in public that challenged New York regulations requiring all citizens to demonstrate "proper cause" to obtain concealed carry licenses as violating their Second and Fourteenth Amendment rights. *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 8-16, 31 (2022). The Supreme Court reasoned that reliance on means-end analysis in the Second Amendment context was inconsistent with "*Heller*'s methodology [that] centered on constitutional text and history." *Id.* at 16-24. The Supreme Court announced the appropriate standard for Second Amendment analysis: (1) "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct"; and (2) if the conduct is presumptively protected, "[t]he government must then justify its reg-

ulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 19, 24.  In *Bruen*, as it did in *Heller*, the Supreme Court referenced the Second Amendment rights of "law-abiding, responsible citizens." *Id.* at 26, 38 n.9, 70; *Heller*, 554 U.S. at 635.

In our initial panel decision in *Dubois*, we rejected a defendant's Second Amendment challenge to § 922(g)(1) under *Bruen* on the ground that *Bruen* did not abrogate *Rozier*, which relied on *Heller*, and that we remained bound by *Rozier*.  *United States v. Dubois (Dubois I)*, 94 F.4th 1284, 1291-93 (11th Cir. 2024), *cert. granted and judgment vacated sub nom.*, *Dubois v. United States*, 145 S. Ct. 1041 (2025), *and reinstated by*, *Dubois II*, 139 F.4th 887 (11th Cir. 2025).

In *United States v. Rahimi*, 602 U.S. 680 (2024), decided in June 2024, the Supreme Court held that § 922(g)(8), a different subsection of the statute that prohibits firearm possession by individuals subject to domestic violence restraining orders, was constitutional because the law comported with the principles underlying the Second Amendment.  602 U.S. at 693-700.  In reaching that conclusion, the Court explained that "some courts [had] misunderstood" its clarifications to the second step of the framework and that *Bruen* does not require a regulation to have a "historical twin." *Id.* at 691-92 (quoting *Bruen*, 597 U.S. at 30).  The Court stated that the right to bear arms "was never thought to sweep indiscriminately" and extensively detailed the historical tradition of firearm regulations, including the prohibition of classes of individuals from

firearm ownership. *Id*. at 691, 693-98. It also again noted that pro-hibitions on felons' possession of firearms are "presumptively law-ful." *Id*. at 699 (quoting *Heller*, 554 U.S. at 626-27). It also explained that "[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Id*. at 700. Additionally, the Court held that § 922(g)(8) was constitutional as applied to Rahimi because the re-straining order to which Rahimi was subject included a finding that he posed "a credible threat to the physical safety" of another, and the government provided "ample evidence" that the Second Amendment permitted "the disarmament of individuals who pose a credible threat to the physical safety of others." *Id*. at 688-93.

In light of its decision in *Rahimi*, the Supreme Court vacated and remanded *Dubois I* for reconsideration. *Dubois v. United States*, 145 S. Ct. 1041 (2025). On remand, we concluded that *Rahimi* did not abrogate our "holding in *Rozier* that section 922(g)(1) is consti-tutional under the Second Amendment" and reinstated our previ-ous opinion. *Dubois II*, 139 F.4th at 889. We explained, in part, that "*Rahimi* continued to rely on *Heller*" and that "*Rahimi* also did not abrogate *Rozier*." *Id*. at 892-93. We concluded that we would "re-quire clearer instruction from the Supreme Court before we may reconsider the constitutionality of section 922(g)(1)," so *Rozier* con-tinued to bind us. *Id*. at 894.

Last, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en*

*banc*." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). We have "categorically reject[ed] any exception to the prior panel precedent rule based upon a perceived defect in the prior panel's reasoning or analysis as it relates to the law in existence at that time. *Smith v. GTE Corp.*, 236 F.3d 1292, 1303 (11th Cir. 2001).

We conclude that summary affirmance is warranted here. We held in *Rozier* that § 922(g)(1) is constitutional under the Second Amendment and reaffirmed in *Dubois II* that neither *Bruen* nor *Rahimi* had abrogated *Rozier*. *Dubois II*, 139 F.4th at 891-94; *Rozier*, 598 F.3d at 770-71. Scott's as-applied constitutional challenge to § 922(g)(1) is likewise foreclosed by *Rozier*, which held that Rozier's purpose for possessing a firearm and the fact that the firearm was constrained to his home was immaterial because felons as a class could be excluded from firearm possession. *Rozier*, 598 F.3d at 770-71. Our decisions in *Dubois II* and *Rozier* are binding on us under the prior-panel-precedent rule, despite Scott's arguments that they were wrongly decided. *Archer*, 531 F.3d at 1352; *Smith*, 236 F.3d at 1303.

Accordingly, because the government's position is clearly correct as a matter of law, we GRANT the government's motion for summary affirmance. *Groendyke Transp., Inc.*, 406 F.2d at 1162.

**AFFIRMED.**